# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BALMORAL RACING CLUB, INC., and | ) | Case No. 14-45711 |
| MAYWOOD PARK TROTTING | ) | (Joint Administration Requested) |
| ASSOCIATION, INC., | ) | |
| | ) | Honorable Donald R. Cassling |
| Debtors. | ) | |
| | ) | Hearing Date: December 30, 2014 |
| | ) | Hearing Time: 9:30 a.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on **Tuesday, December 30, 2014, at 9:30 a.m.,** we shall appear before the Honorable Donald R. Cassling of the United States Bankruptcy Court for the Northern District of Illinois, or any other judge sitting in his place and stead, at Courtroom 619 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **MOTION OF DEBTORS FOR ENTRY OF AN ORDER: (I) AUTHORIZING (A) MAINTENANCE OF EXISTING BANK ACCOUNTS, (B) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (C) CONTINUED USE OF EXISTING BUSINESS FORMS, AND (D) CONTINUED USE OF EXISTING BOOKS AND RECORDS; AND (II) WAIVING INVESTMENT AND DEPOSIT REQUIREMENTS OF 11 U.S.C. § 345(b)**, a copy of which is hereby served upon you.

> CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
> NATHAN Q. RUGG, ESQ. (ARDC #6272969)
> ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
> ADELMAN & GETTLEMAN, LTD.
> 53 West Jackson Blvd, Suite 1050
> Chicago, Illinois 60604
> Tel (312) 435-1050
> Fax (312) 435-1059
> **Proposed Counsel for Balmoral Racing Club, Inc. and Maywood Park Trotting Association, Inc.**

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that true and correct copies of this notice and motion were served upon the parties listed on the service list attached hereto via CM/ECF, overnight delivery, and/or facsimile, as indicated therein, on November 24, 2014.

> By: /s/ Nathan Q. Rugg

338913v2                                                                                                                                    1

## SERVICE LIST

**VIA FAX:**
Empress Casino Joliet Corporation
Des Plaines Development Limited
  Partnership
Hollywood Casino-Aurora, Inc.
Elgin Riverboat Resort-Riverboat Casino
c/o Robert Andalman, Esq.
542 South Dearborn, 10th floor
Chicago, IL   60605
FAX:   312-341-0700
*Litigation Counsel*

c/o Jeremy D. Margolis, Esq.
Loeb & Loeb LLP
321 North Clark Street, suite 2300
Chicago, IL   60654
FAX:   312/277-8957
*Litigation Counsel*

Patrick S. Layng, Esq.
Office of the U.S. Trustee
Region 11
219 S. Dearborn Street, Room 873
Chicago, IL 60604
FAX: 312-886-5794

Eric S. Rein, Esq.
Horwood Marcus & Berk, Chartered
500 West Madison, suite 3700
Chicago, IL   60661
FAX:   312/606-3232
*represents FirstMerit Bank*

James D. Newbold, Esq.
Assistant Attorney General,
  Revenue Litigation Bureau
Office of the Illinois Attorney General
100 West Randolph Street, suite 13-222
Chicago, IL 60601-3218
FAX:   312/814-3589
*represents State of Illinois/IRB*

Doug Lipke, Esq. (Bankruptcy Counsel)
Vedder Price, P.C
222 North LaSalle Street, suite 2600
Chicago, IL 60601-1104
FAX:   312/609-5005
*represents Empress Casino Joliet
Corporation, Des Plaines Development
Limited Partnership, Hollywood Casino-
Aurora, Inc., Elgin Riverboat Resort-
Riverboat Casino*
*Bankruptcy Counsel*

Joseph D. Frank, Esq./Frances Gecker, Esq.
324 North LaSalle, Suite 623
Chicago, IL   60654
FAX:   312/276-0035
*represents Illinois Harness Horsemen's
Association*

Scott R. Clar, Esq.
Crane Heyman Simon Welch & Clar
135 South LaSalle Street, suite 3705
Chicago, IL   60603-4101
FAX:   312/641-7114
*represents John Johnston*

RGS
Red Rock Administrative Services
9275 West Flamingo Road, Suite 120
Las Vegas, NV   89147
attn.:  Rob Terry
FAX:  702/243-6885

MidAmerican Energy Company
P.O. Box 8020
Davenport, IA   52808
attn.:  Paula Paaske
FAX:  563/333-8749

Woodbine Entertainment
55 Rexdale Boulevard, Box 156
Toronto, Ontario, Canada  M9W 5L2
attn.:  Chermain Simon
FAX:  416/213-2127

338913v2                                                                                                                                  1

Illinois Harness Horsemen's Association
15 Spinning Wheel Road, Suite 406
Hinsdale, IL   60521
attn.: Tony Somone
FAX: 630/323-0761

Roberts Communications Network
4175 Cameron Street, suite 10
Las Vegas, NV   89103
attn.: Todd Roberts/Joanne Colon
FAX: 702/227-7585

Expressbet
200 Racetrack Road, bldg. 26
Washington, PA   15301
attn.: Krystal Parish
FAX: 724/229-6226

Northfield Park Associates, LLC
10705 Northfield Road
P.O. Box 374
Northfield, OH   44067
attn.: Sharon Pratt
FAX: 330/468-8975

Delta Downs
2717 Delta Downs Dr.
Vinton, LA   70668
attn.: Mary Migues
FAX: 337/589-3542

Pompano Park Assoc.
1800 S.W. Third Street
Pompano Beach, FL   33069
attn.: Heather Belmonte
FAX: 954-972-9970

Penn National c/o MRTA
P.O. Box 32
Grantville, PA   17028
attn.: Adrienne Hill
FAX: 717/469-3397

Yonkers Raceway
810 Central Avenue
Yonkers, NY   10704
attn.: Toni Gallow
FAX: 914/457-2419

New Meadowslands Racetrack LLC
Pari Global Solutions, Inc.
7950 Dublin Blvd., suite 216
Dublin, CA   94568
attn.: Laura Nevels
FAX: 925/803-8168

Red Mile
c/o Lexington Trots Breeders Assn, LLC
1200 Red Mile Road
P.O. Box 420
Lexington, KY   40588
attn.: Susan Denny
FAX: 859/258-7697

Amwest Entertainment LLC
13011 W. Highway 42, suite 107
Prospect Heights, KY   40059
attn.: Brittany Goodman
FAX: 502/292-1076

Monarch Content Management
285 West Huntington Drive
Arcadia, CA   91007
attn.: Xenia Prato
FAX: 626/821-1523

Churchill Downs
c/o United Tote Settlement Dept.
600 N. Hurstbourne Pkwy, suite 400
Louisville, KY   40222
attn.: Tara Stout
FAX: 502/638-3893

Del Mar Thoroughbred Club
2260 Jimmy Durante Blvd.
Del Mar, CA   92014
attn.: Laurie McKee
FAX: 858/792-6157

Evangeline Downs
2235 Creswell Lane
Opelousas, LA   70570
attn.:  Del Perry
FAX:  337/942-4599

Arlington Park International Race Course
2200 W. Euclid Ave
Arlington Heights, IL 60005
attn:  Dan Peters
FAX: 847-255-4331

Cook County Collector
PO Box 641847
Chicago, IL 60664-1847
attn:  Maria Pappas
FAX: 312-603-2147

Hawthorne Race Course
3501 South Laramie Ave
Cicero, IL 60804
attn:  Pam Nickels
FAX: 708-780-3677

Illinois Harness Horsemens Asn
15 Spinning Wheel Road
Suite 432
Hinsdale, IL 60521
attn:  Tony Simone
FAX: 630-323-0761

Ohio Settlement Agent
P.O. Box 374
Northfield, OH 44067
attn:  Ben Moldovan
FAX: 330-468-8975

Pari Global Solutions, Inc
7950 Dublin Blvd, Suite 216
Dublin, CA 94568
attn:  Laura Nevels
FAX: 925-803-8168

Premier Gateway International
4th Floor, Victory House Extension
24-28 Prospect Hill
Douglas Isle Of Man IM1 1EQ UK
attn:  Donna Hughes
FAX: 44 1624-613968

Remington Park
One Remington Place
Oklahoma City, OK 73111
attn:  Chris Beam
FAX: 972-642-9363

Village Of Melrose Park
1000 N. 25th Ave.
Melrose Park, IL 60160
attn:  Rose Vasquez
FAX: 708-343-8015

**VIA OVERNIGHT DELIVERY**:
Elite Turf Club
5340 Runningbrook Road
Las Vegas, NV   89120
attn.:  Sam Kirshenbaum

DuPage County Treasurer
421 N. County Farm Rd.
Wheaton IL 60189
attn:  Gwen Henry

338913v2                                                                                                              3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BALMORAL RACING CLUB, INC., and | ) | Case No. 14-45711 |
| MAYWOOD PARK TROTTING | ) | (Joint Administration Requested) |
| ASSOCIATION, INC., | ) | |
| | ) | Honorable Donald R. Cassling |
| Debtors. | ) | |
| | ) | Hearing Date: December 30, 2014 |
| | ) | Hearing Time: 9:30 a.m. |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER:
(I) AUTHORIZING (A) MAINTENANCE OF EXISTING BANK ACCOUNTS,
(B) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM,
(C) CONTINUED USE OF EXISTING BUSINESS FORMS, AND (D) CONTINUED USE
OF EXISTING BOOKS AND RECORDS; AND (II) WAIVING INVESTMENT AND
DEPOSIT REQUIREMENTS OF 11 U.S.C. § 345(b)**

NOW COME Balmoral Racing Club, Inc. ("**Balmoral**") and Maywood Park Trotting Association, Inc. ("**Maywood**"), debtors and debtors in possession (collectively, the "**Debtors**"), by and through their undersigned counsel and, pursuant to 11 U.S.C. §§ 105, 345, and 363, move this Court for entry of an order (I) authorizing: (a) maintenance of their existing bank accounts, (b) continued use of their existing cash management system, (c) continued use of their existing business forms, and (d) continued use of their existing books and records; and (II) waiving the investment and deposit requirements of 11 U.S.C. § 345(b) (the "**Motion**"). In support thereof, the Debtors respectfully state as follows:

**I.    FACTUAL BACKGROUND**

1.    On December 24, 2014 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "**Code**"). The Debtors have moved for the joint administration of their bankruptcy

338913v2                                                                                              1

cases (the "**Chapter 11 Cases**"). Since the Petition Date, the Debtors have remained in possession of their assets and have continued to operate their businesses as debtors in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2.  Neither a trustee nor a committee of unsecured creditors has been appointed in the Chapter 11 Cases.

3.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 105, 345, and 363 of the Code.

4.  The nature of the Debtors' businesses and the factual background relating to the commencement of the Chapter 11 Cases are set forth in more detail in the Declaration of Randall Olech in Support of Chapter 11 Petitions and First-Day Motions[1] (the "**Declaration**") filed on the Petition Date and incorporated herein by reference.

## II.   RELIEF REQUESTED

5.  By this Motion, the Debtors seek an order: (i) authorizing: (a) maintenance of their existing bank accounts, (b) continued use of their existing cash management system, (c) continued use of their existing business forms, and (d) continued use of their existing books and records; and (ii) waiving the investment and deposit requirements of 11 U.S.C. § 345(b).

6.  The Office of the United States Trustee (the "**UST**") has established certain operating guidelines for debtors in possession. Among other things, these guidelines require a chapter 11 debtor to (i) close all existing bank accounts and open new debtor-in-possession bank accounts; (ii) establish one debtor-in-possession account for all estate monies required for the

---

[1] Any capitalized terms not otherwise defined in the Motion shall have the same meaning as ascribed in the Declaration.

338913v2                                                                 2

payment of taxes, including payroll taxes; (iii) maintain a separate debtor-in-possession account for cash collateral; and (iv) open a new set of books and records as of the commencement date of the case. These guidelines are designed to provide a clear line of demarcation between prepetition and postpetition transactions and operations, and prevent the inadvertent postpetition payment of prepetition claims. As detailed herein, however, the Debtors request that these guidelines be waived in the Chapter 11 Cases, as the Debtors are capable of operating their businesses within the dictates of the Code without being saddled with a burdensome new system of cash management and bank accounts.

### A. The Debtors should be granted authority to maintain their existing bank accounts.

7. Prior to the Petition Date, each of the Debtors maintained certain bank accounts (the "**Bank Accounts**") in the ordinary course of their businesses. The ten (10) bank accounts maintained by Balmoral prior to the Petition Date are listed on Exhibit A hereto. The thirteen (13) bank accounts maintained by Maywood in its own name prior to the Petition Date are listed on Exhibit B hereto. Separately, the three (3) bank accounts maintained by Maywood, doing business under the name "BetZotic" prior to the Petition Date, are listed on Exhibit C hereto.[2] Together, the Bank Accounts make up a centralized cash management system that the Debtors use to collect, transfer, and disburse funds, and to record accurately such collections, transfers, and disbursements.

8. All twenty-six (26) of the Bank Accounts are maintained at First Merit Bank ("**First Merit**"). The Bank Accounts include general operating accounts, payroll accounts, ATM accounts, tax clearing accounts, and accounts segregated and maintained with regard to specific

---

[2] As discussed in greater detail in the Declaration, Maywood operates an online betting program which does business under the name "BetZotic."

338913v2                                                                                                                       3

statutory obligations of the Debtors, *e.g.,* uncashed winning tickets (or "outs"), simulcast obligations, and the Purse accounts maintained for the horsemen.

9. Notwithstanding the UST guideline that new bank accounts be opened, the Debtors respectfully submit that they would experience undue hardship if required to close all of the Bank Accounts and open new accounts at another bank. Among other things, resultant delays, confusion, and disruption of the Debtors' daily collection of receivables is expected in the event that the Debtors were forced to close their existing Bank Accounts and open new accounts.

10. The Debtors have been banking with First Merit for over four (4) years. In addition, First Merit is a large, diversified financial services institution with FDIC coverage (up to an applicable limit per account).

11. In order to ensure immediate access to receivables, to avoid delays in payments to administrative creditors, and ensure as smooth a transition into Chapter 11 as possible with minimal disruption, it is important that the Debtors be permitted to maintain their respective Bank Accounts. Subject to a prohibition against honoring prepetition checks without specific authorization from this Court, the Debtors request that the Bank Accounts be deemed debtor-in-possession accounts and that their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms as those employed during the prepetition period, be authorized.

12. To protect against inadvertent payment of prepetition claims, the Debtors' personnel and the personnel at First Merit with whom the Debtors customarily deal will be instructed how to distinguish readily between prepetition and postpetition obligations without closing existing accounts and opening new ones. The Debtors have been in contact with First

Merit and its counsel prior to the Petition Date, in part to address such concerns. Further, to ease the task of distinguishing between prepetition and postpetition checks, the Debtors will leave a gap in their check numbers (rounding subsequent check numbers up to the next hundred, as indicated on the applicable Exhibits hereto) such that check numbers preceding the gap will be readily identifiable as prepetition checks and the check numbers following the gap will be readily identifiable as postpetition checks.

13. The Debtors submit that if the relief requested in this Motion is granted, they will use their best efforts to not pay, and First Merit will not be directed to pay, any debts incurred before the Petition Date, except to the extent the Court may authorize the payment of such debts. The Debtors are confident they can avoid such prepetition payments and have been particularly attuned to this issue prior to the Petition Date in light of the amount of the Judgment and the timing of its entry. For example, the Debtors have taken great care to ensure that prior to the Petition Date their employees received paychecks for prepetition work and have calculated the small prepetition "stub period" of work, for which court authority is required before corresponding paychecks are issued post-petition in the upcoming weeks (such payments are subject to a separate motion filed by the Debtors for appropriate court authority).

14. The Debtors therefore seek to be excused from the UST's requirement that the Bank Accounts be closed.

### B. The Debtors should be authorized to continue using their existing cash management system.

15. In order to lessen the disruption caused by the Chapter 11 Cases and maximize the value of the Debtors' estates, the Debtors also request authority to continue to use their existing cash management system (the "**Cash Management System**"), as it may be modified as required by the Debtors in the exercise of their business judgment.

16. The Cash Management System allows the Debtors to manage all of their cash flow and disbursement needs and includes the necessary account mechanisms to enable the Debtors to trace funds, ensure that all transactions are adequately documented and readily ascertainable, and comply with applicable requirements. The Debtors will continue to maintain detailed records reflecting any transfers of funds.

17. The Debtors have employed the Cash Management System for many years, and the Cash Management System constitutes their ordinary business practice. Because of the Debtors' integrated financial structure, it would not be possible to establish a new system of accounts and a new cash management and disbursement system without incurring substantial additional costs and expenses, and imposing delays and inconveniences that could threaten the viability of the Debtors' ongoing operations. Consequently, maintenance of the existing Cash Management System is not only essential, but also in the best interests of all creditors and other parties in interest.

18. Bankruptcy courts routinely grant chapter 11 debtors authority to continue utilizing existing cash management systems. *See In re The Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985) (stating that it was "entirely consistent" with the requirements of section 363 of the Code for the bankruptcy court to authorize the debtor to use its prepetition "routine cash management system"); *see also, e.g., In re UNR Indus., Inc.*, 46 B.R. 25, 27 (Bankr. N.D. Ill. 1984) (noting that the debtors "utilize[d] a court approved and common cash management system").

19. As one bankruptcy court has explained, a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas*

*Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1993), *aff'd in part, rev'd in part*, 997 F.2d 1039, 1061 (3d Cir. 1993) (emphasizing the bankruptcy court's reasoning that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."); *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (noting that a cash management system allowed the debtor "to administer more efficiently and effectively its financial operations and assets").

20. For the foregoing reasons, the Debtors' maintenance of the Cash Management System is not only essential but also is in the best interests of the estate, all creditors and other parties in interest.

C. **The Debtors should be granted authority to continue to use their existing business forms.**

21. In order to minimize the expenses borne by their estates, the Debtors also request that they be permitted to continue to use their existing correspondence and business forms (including but not limited to letterhead, invoices, etc.) without alteration or change to those used before the Petition Date. Changing correspondence and business forms would be unnecessary, burdensome to the Debtors' estates, expensive, and disruptive to business operations. *See In re Gold Standard Baking, Inc.*, 179 B.R. 98, 105-06 (Bankr. N.D. Ill. 1995) (holding Bankruptcy Administrator's requirement prohibiting issuance of checks without "Debtor in Possession" designation to be unenforceable); *In re Johnson*, 106 B.R. 623, 625 (Bankr. D. Neb. 1989) (holding that debtor was not required to obtain new checks imprinted with "debtor in possession").

22. If the Debtors are not permitted to continue to use their existing checks and business forms, the resulting prejudice will include significant delay in the administration of the Debtors' business operations and unnecessary cost to the Debtors' estates to print new checks

and forms. For these reasons, the Debtors request that they be authorized to use existing business forms without placing the label "Debtor in Possession" on each such form.

### D. The Debtors should be granted authority to continue to use their existing books and records.

23. In order to minimize expenses to the Debtors' estates and avoid time-consuming administrative burdens, the Debtors also request that they be authorized to continue to use their existing books and records.

24. Opening new books and records would be burdensome to the estate and disruptive to the Debtors' business operations. For these reasons, the Debtors request that they be authorized to continue using their existing books and records, provided that the Debtors make appropriate notations in the books and records to reflect the Petition Date and the commencement of the Chapter 11 Cases.

### E. Cause exists to waive the investment and deposit guidelines of section 345(b) of the Code.

25. Section 345(b) of the Code authorizes deposits or investments of money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) provides that the trustee or debtor in possession must require, from the entity with which the money is deposited or invested, a bond in favor of the United States secured by the undertaking of an adequate corporate surety. 11 U.S.C. § 345(b).

26. A court may, however, relieve a debtor in possession of the restrictions imposed by section 345(b) for cause. *Id*.

27. As set forth above, the Debtors, in the ordinary course of their businesses, maintain the Bank Accounts with First Merit. The Debtors understand First Merit to be a financially stable banking institution which is FDIC-insured. Consequently, it is unnecessary and unduly burdensome to require the Debtors to demand that First Merit issue bonds in connection with the Bank Accounts. Cause exists to waive the investment and deposit requirements under section 345(b) of the Code.

### III. NOTICE

28. Notice of the filing of this Motion and the hearing scheduled therefor has been provided by CM/ECF, overnight delivery, and/or facsimile to: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) Balmoral's 20 largest unsecured creditors pursuant to Federal Rule of Bankruptcy Procedure 1007(d); (c) Maywood's 20 largest unsecured creditors pursuant to Federal Rule of Bankruptcy Procedure 1007; and (d) all other parties who have requested notice and service of pleadings in either of the Chapter 11 Cases. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

### IV. CONCLUSION

29. The Debtors respectfully submit that the requested relief is critical to avoid immediate and substantial disruption to their operations and is necessary to preserve business continuity and avoid the operational and administrative paralysis that would occur without such relief.

WHEREFORE, Balmoral Racing Club, Inc. and Maywood Park Trotting Association, Inc., debtors herein, respectfully request the entry of an order in accordance with the foregoing recommendations in the form filed herewith and made a part hereof without further notice, and for such other and further relief as is just.

        Respectfully Submitted,

        BALMORAL RACING CLUB, INC. and
        MAYWOOD PARK
        TROTTING ASSOCIATION, INC.

        By: /s/ Nathan Q. Rugg
            One of their proposed attorneys

CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
NATHAN Q. RUGG, ESQ. (ARDC #6272969)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for the Debtors**