## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Balmoral Racing Club, Inc., | ) | Case No. 14-45711 |
| | ) | |
| Debtors. | ) | Honorable Donald R. Cassling |

---

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Maywood Park Trotting Association, Inc., | ) | Case No. 14-45718 |
| | ) | |
| Debtors. | ) | Honorable Donald R. Cassling |

---

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on Tuesday, December 30, 2014, at 9:30 a.m., we shall appear before the Honorable Donald R. Cassling of the United States Bankruptcy Court for the Northern District of Illinois, or any other judge sitting in his stead, at Courtroom 619 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present **MOTION OF JUDGMENT CREDITORS FOR LIMITED RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362**, a copy of which is hereby served upon you.

## CERTIFICATE OF SERVICE

    I, Andrew R. Greene, an attorney, hereby certify that the foregoing NOTICE OF MOTION and attached MOTION OF JUDGMENT CREDITORS FOR LIMITED RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362 were electronically filed on December 26, 2014 and will be served upon the parties registered to receive notice via the court's ECF notice system.

                                                       By:   /s/ Andrew R. Greene

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Balmoral Racing Club, Inc., | ) | Case No. 14-45711 |
| | ) | |
| Debtors. | ) | Honorable Donald R. Cassling |

-----------------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Maywood Park Trotting Association, Inc., | ) | Case No. 14-45718 |
| | ) | |
| Debtors. | ) | Honorable Donald R. Cassling |

-----------------------------------------------------------------------------------------------------------------

**MOTION OF JUDGMENT CREDITORS FOR LIMITED
RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362**

Empress Casino Joliet Corporation, Des Plaines Development Limited Partnership, d/b/a Harrah's Casino Cruises Joliet, Hollywood Casino-Aurora, Inc., and Elgin Riverboat Resort-Riverboat Casino, d/b/a Grand Victoria Casino (the "Judgment Creditors"), by and through their undersigned counsel, hereby move the Court for limited relief from the automatic stay pursuant to 11 U.S.C. § 362, as described further below.

**INTRODUCTION**

The bankruptcy filings in these cases arise from an $81.8 million judgment entered in favor of the Judgment Creditors against Balmoral Racing Club, Inc. and Maywood Park Trotting Assn. Inc. (the "Debtors") and John Johnston ("Johnston"), an executive and stakeholder in the Debtors, pursuant to, *inter alia*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964. The judgment was entered December 11, 2014 and followed a six-day jury trial before Judge Matthew F. Kennelly in the United States District Court for the Northern District of Illinois, Case No. 09-cv-03585.

This motion has two limited and discrete purposes: First, the Judgment Creditors seek to comply with Northern District of Illinois Local Rule 54.3 and to follow the procedures in that rule to liquidate their claim for costs, including attorney fees, pursuant to RICO. *See* 18 U.S.C. § 1964(c). Specifically, the Judgment Creditors seek to comply with the provisions of Local Rule 54.3(d), which require them to begin pre-motion efforts to agree on costs and fees from the underlying litigation beginning on Friday, January 2, 2015. The Judgment Creditors do not seek here to collect any award of costs or fees. The purpose of this motion is to allow them to liquidate their claim for costs, including attorneys' fees, in the District Court. After that, as appropriate, any awarded amount will become a claim here.

Second, the Judgment Creditors seek to utilize state-law citation proceedings to discover and preserve assets of the Debtors that are in the possession of entities affiliated with the Debtors, several of which are shell companies with no business operations or employees, which exist entirely or primarily as bank accounts that are effectively controlled by the Debtors. Again, the Judgment Creditors do not seek by this motion leave to obtain turnover to themselves of any assets so discovered. Rather, they seek to discover and preserve the assets, which, as appropriate, would be included in the bankruptcy estates.

In further support of this Motion, the Judgment Creditors state as follows:[1]

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

---

[1]    On Friday, December 26, 2014, Michael Eidelman, counsel for the Judgment Creditors, contacted Chad Gettleman, counsel for the Debtors, to discuss the present motion. They agreed to meet and confer in order to attempt to negotiate agreed relief prior to hearing of the motion on Tuesday, December 30.

2

2. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3. On December 24, 2014 (the "Petition Date"), the Debtors filed their voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), thereby commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").

4. On December 11, 2014, following a six-day jury trial, Judge Kennelly had entered judgment for the Judgment Creditors and against the Debtors and Johnston, pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, and state-law theories of Civil Conspiracy and Unjust Enrichment.

5. During the trial, the Judgment Creditors proved that the Debtors, by and through their executive and stakeholder, Johnston, conspired with a RICO Enterprise that was comprised of former Illinois Governor Rod Blagojevich, Blagojevich's campaign fund, Friends of Blagojevich, and others (the "Blagojevich Enterprise"). The purpose of the Debtors' conspiracy with the Blagojevich Enterprise was to obtain Blagojevich's signature on a law that effectively required the Judgment Creditors to pay 3% of their gross revenue to various horse racing interests. These facts were the basis of one of the criminal counts on which Blagojevich was ultimately convicted (for conspiracy to solicit the bribe). Johnston invoked his Fifth Amendment right against self-incrimination in the Blagojevich investigation and received immunity from criminal prosecution. The Judgment Creditors argued to the jury that, by their conspiracy with the Blagojevich Enterprise, the Debtors and Johnston participated in criminal wire fraud, bribery and official misconduct violations. The jury agreed.

3

6.     As a result of the Debtors' conspiracy with the Blagojevich Enterprise, the Debtors received $26.3 million of the Judgment Creditors' revenue, which was distributed to the Debtors in 2010 and 2011, during the pendency of the RICO case.

7.     Ultimately, the judgment against the Debtors and Johnston, jointly and severally, totaled $77.8 million. This was determined by trebling the jury's determination of $25,940,000 in compensatory damages to $77,820,000, consistent with RICO. See 18 U.S.C. § 1964(c). The jury further awarded, and the judgment includes, $4 million in punitive damages against Johnston individually, based on his participation in the illegal conspiracy with Blagojevich. A copy of the District Court judgment is attached as Exhibit A.

8.     The Judgment Creditors would have been entitled to commence execution on the judgment on Friday, December 26, but to avoid execution on the judgment, and in lieu of posting security to delay execution, pursuant to either Fed. R. Civ. P. 62 or Fed. R. App. P. 8, the Debtors on December 24, 2014, filed their voluntary bankruptcy petitions in this Court. Johnston separately filed an individual petition the day before, on December 23, 2014.

9.     Pursuant to RICO, the Judgment Creditors are entitled to their costs of suit, including attorneys' fees incurred in prosecuting the RICO case. *See* 18 U.S.C. § 1964(c). Because the underlying suit in this case spanned five-and-a-half years of litigation, two appeals to the Seventh Circuit, one *en banc* argument there, two rounds of summary judgment motions and the jury trial, the Judgment Creditors' costs of suit in this case, including attorneys' fees, is substantial. Their petition to recover those costs is best reviewed by the District Court, which oversaw and is most familiar with the litigation. The Local Rules for the Northern District of Illinois provide a procedure by which such petitions are considered, including a pre-motion procedure that in this case would by rule begin January 2, 2014. Local Rule 54.3.

4

10. During the underlying RICO litigation, the Judgment Creditors took representative depositions of various affiliated entities owned or operated by the Debtors or individuals associated with the Debtors. Several of these are corporate shells, with no business operations, and which function as bank accounts in which assets that effectively belong to the Debtors are lodged. In another case, one of the entities shares an address, employees, ownership and management with the Debtors, and is used simply to provide services to the Debtors. These entities are:

    a. Racing Associations of Illinois ("RA"). RA is a non-profit entity with no employees and that is managed exclusively by John Johnston. 8/6/12 RA Dep. Tr. (M. Belmonte, witness) at 9, 11, excerpts attached as Exhibit B. RA is funded by the Debtors. *Id.* at 12. RA has no offices separate from the Debtors' offices. *Id.* at 36. RA is used to fund certain expenses (*e.g.*, lobbying expenses and campaign contributions) for the Debtors and "[p]eriodically during the year Balmoral and Maywood fund the account of Racing Association, based on prior history of expenses." *Id.* at 12-13.

    b. Egyptian Trotting Association ("ETA"). ETA used to be a company that obtained racing dates for horse races from the Illinois Racing Board, but it has not done so or had any other operations since 1999. 8/21/12 ETA Dep. Tr. at 7-8 (P. Svensen, witness), excerpts of which are attached as Exhibit C. Its official address is the same as Debtor Maywood, but there is no space at that address devoted to ETA. *Id.* at 9. It has no employees, but its management consists of Johnston, his brother William Johnston III and Lester McKeever, a business partner of the Johnstons who is a stakeholder in the Debtors. *Id.* at 10. ETA has a bank account that is funded by the Debtors. *Id.* at 10-11.

    c. Associates Racing Association ("ARA"). Like ETA, ARA used to be a company that obtained racing dates for horse races from the Illinois Racing Board, but it has not done so or had any operations since 2007. 8/21/12 ARA Dep. Tr. at 6-7 (P. Svensen, witness), excerpts of which are attached as Exhibit D. ARA's address is also the same as Debtor Maywood, but it has no office there of its own and has no employees. *Id.* ARA is simply a bank account. *Id.* at 8-9. ARA is owned by Lester McKeever and its General Manager is William Johnston III. *Id.* at 11-12.

    d. Coast to Coast ("CTC"). CTC provides food and beverage services at the Debtors' race tracks. 8/21/12 CTC Dep. Tr. at 8 (P. Svensen, witness), excerpts of which are attached as Exhibit E. Again, its address is the same as Debtor Maywood and CTC's representative witness was Maywood's

5

>Vice President of Finance. *Id.* at 8 & 5-6. In fact, Maywood's Vice President of Finance oversees the accounting operations of Maywood, CTC, ETA and ARA, though he is employed only by Maywood. *Id.* at 5-6. CTC does have its own employees, but they function for the Debtors and CTC is managed by Johnston and William Johnston III. *Id.* at 8-9. The Johnstons are the authorized signatories on CTC's accounts and they are CTC's shareholders, with their father William Johnston, Jr. *Id.* at 10-11.

## **RELIEF REQUESTED AND THE BASES FOR THAT RELIEF**

11. As stated in the Introduction above, the Judgment Creditors seek the entry of an order granting immediate, discrete and limited relief from the automatic stay under Section 362(d) of the Bankruptcy Code to allow them: (a) to liquidate their claim for costs, including attorneys' fees, pursuant to RICO and consistent with the procedures stated in Local Rule 54.3; and (b) to utilize citation proceedings to preserve and identify potential assets of the estate held by non-Debtor affiliates.  So long as these bankruptcy proceedings continue, the Judgment Creditors do not seek relief from the stay to obtain the monies identified through these two steps, but instead seek to have included in these proceedings and in the estate their claim for costs/fees and any assets identified through the citations proceedings.

12. The Bankruptcy Code provides relief from the automatic stay "for cause," which includes "the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). "Cause" in this sense is not defined, but the Seventh Circuit has adopted three factors to consider in this regard, which include whether:

>(a) Any great prejudice to either the bankrupt estate or the debtor will result from the requested relief from stay;
>
>(b) The hardship to the creditor from maintenance of the stay considerably outweighs the hardship of the debtor; and
>
>(c) The creditor has a probability of prevailing on the merits.

*Matter of Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991). These factors favor each of the relief from stay that the Judgment Creditors seek here.

13. Concerning their request for relief from the stay to pursue their costs and fee petition in the District Court, consistent with RICO and Local Rule 54.3, such petitions are subject to the automatic stay and require relief from the stay to be filed. *See Apex Oil Co. v. Belcher Co. of New York Inc.*, 865 F.2d 504, 505 (2nd Cir. 1989) ("While we agree that Section 362 stays motions for costs pursuant to Fed. R. App. P. 39, we hold that movants subject to the automatic stay of Section 362 must seek relief from the automatic stay in the bankruptcy court within 14 days."). In this case, the Debtors will not be unfairly prejudiced from allowing the cost/fee petition process to proceed in the District Court, which Court is most familiar with the work required to obtain the judgment in this case. By contrast, the Judgment Creditors would be severely prejudiced if they were denied the right to proceed with their petition, which is their statutory right under RICO. Concerning the likelihood that the Judgment Creditors will prevail in their cost/fee petition, the award of costs of litigation, including attorneys' fees, is mandatory under RICO, so that there can be no issue in that regard. *See* 18 U.S.C. § 1964(c). Accordingly, the Judgment Creditors are properly allowed this relief from stay.

14. Concerning the citation proceedings against Debtor-affiliates RA, ETA, ARA and CTC, there is reasonable cause – as noted above – to conclude that the Debtors have attempted to secure money in these entities that is properly reached to satisfy the Judgment Creditors' judgment. These entities are not "debtors" in these Bankruptcy Proceedings, and thus not technically subject to the automatic stay. *In re Koop,* 2002 WL 1046700, *5 (Bankr. N.D.Ill. 2002) (automatic stay did not extend to debtor in his capacity as registered agent for related corporation intended to discover corporate assets); *see also In re Lengacher*, 485 B.R. 380, 383 (Bankr. N.D. Ind. 2012) (for example, stay "does not protect separate legal entities, corporations or non-debtor co-defendants in pending litigation"). Nonetheless, the Judgment Creditors

7

contend that the assets of RA, ETA, ARA and CTC are, either *de jure* or *de facto*, the assets of the Debtors, which would implicate the stay. *See In re Nash*, 228 B.R. 669, 672 (N.D. Bankr. N.D. Ill. 1999) (discussing breadth of property subject to bankruptcy estate), *citing United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S. Ct. 2309, 2312, 76 L.Ed.2d 515 (1983). Accordingly, the Judgment Creditors seek limited relief from the stay to allow citation proceedings against these entities. The Judgment Creditors seek to serve citations and to conduct discovery – documents and testimony – necessary to identify the extent to which these entities possess assets of the estate and/or are alter egos of the Debtors. That will preserve any assets of the Debtors held by the entities. The Judgment Creditors do not seek leave to pursue those assets at this time, other than to have them included, as appropriate, in the bankruptcy estates.

15. Initially, the Debtors themselves will not be subject to the citation proceedings against the related entities and so will suffer no prejudice from them to the extent that they proceed. If the Judgment Creditors successfully establish the assets of the related entities are in fact the assets of the Debtors, whether in whole or in part, then any prejudice to the Debtors will be only that which is necessary and appropriate to preserve the assets of these estates. By contrast, the Judgment Creditors stand to be substantially prejudiced should these alter ego entities be successfully utilized to shield assets from the estate and to dissipate the Debtors' assets outside the supervision and jurisdiction of this Court. Given the testimony in the underlying litigation about these entities, the Judgment Creditors are likely to prevail in demonstrating that these entities are, in fact, alter egos of the Debtors.

## NOTICE

16. The Judgment Creditors will serve copies of this Motion on counsel for the Debtors by ECF notice. The Judgment Creditors submit that notice of this Motion in this manner is sufficient and proper and that no further notice is necessary.

17. No prior request for the relief requested herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Judgment Creditors respectfully request that this Court enter an order allowing the Judgment Creditors relief from the automatic stay in order to: (a) liquidate in the District Court their claim for the costs of the underlying litigation, including attorneys' fees, for the purpose of including the amount of that claim, as appropriate, in these Bankruptcy Proceedings; and (b) proceed with citation proceedings against Racing Associations, Egyptian Trotting Association, Associates Racing Association and Coast to Coast, in order to preserve and identify additional assets of the Debtors; and (c) granting the Judgment Creditors any such other, further and different relief as is just and proper.

    Respectfully submitted,

    Empress Casino Joliet Corporation, Des Plaines Development Limited Partnership, d/b/a Harrah's Casino Cruises Joliet, Hollywood Casino-Aurora, Inc., and Elgin Riverboat Resort-Riverboat Casino, d/b/a Grand Victoria Casino

    By: /s/ Andrew R. Greene

Michael M. Eidelman (#6197788)
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601
(312) 609-7500 telephone
(312) 609-5005 facsimile

Robert M. Andalman (#6209454)
Andrew R. Greene (#6225072)
A&G Law LLC
542 South Dearborn, 10th Floor
Chicago, Illinois 60605
(312) 341-3900 telephone
(312) 341-0700 facsimile

*Counsel for the Judgment Creditors*