## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Balmoral Racing Club, Inc., | ) | Case No. 14-45711 |
| | ) | |
| Debtors. | ) | Honorable Donald R. Cassling |

-------------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Maywood Park Trotting Association, Inc., | ) | Case No. 14-45718 |
| | ) | |
| Debtors. | ) | Honorable Donald R. Cassling |

-------------------------------------------------------------------------------------------------------------

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on Tuesday, January 13, 2015, at 9:30 a.m., we shall appear before the Honorable Donald R. Cassling of the United States Bankruptcy Court for the Northern District of Illinois, or any other judge sitting in his stead, at Courtroom 619 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present **ROUTINE MOTION OF JUDGMENT CREDITORS FOR AN ORDER AUTHORIZING AND DIRECTING RULE 2004 EXAMINATIONS OF AND PRODUCTION OF DOCUMENTS BY AFFILIATED ENTITIES**, a copy of which is hereby served upon you.

### CERTIFICATE OF SERVICE

    I, Andrew R. Greene, an attorney, hereby certify that the foregoing NOTICE OF MOTION and attached ROUTINE MOTION OF JUDGMENT CREDITORS FOR AN ORDER AUTHORIZING AND DIRECTING RULE 2004 EXAMINATIONS OF AND PRODUCTION OF DOCUMENTS BY AFFILIATED ENTITIES were electronically filed on January 9, 2015 and will be served upon the parties registered to receive notice via the court's ECF notice system.

                                                                     By:  /s/ Andrew R. Greene

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Balmoral Racing Club, Inc., | ) | Case No. 14-45711 |
| | ) | |
| Debtors. | ) | Honorable Donald R. Cassling |

---

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Maywood Park Trotting Association, Inc., | ) | Case No. 14-45718 |
| | ) | |
| Debtors. | ) | Honorable Donald R. Cassling |

---

**ROUTINE MOTION OF JUDGMENT CREDITORS FOR AN ORDER
AUTHORIZING AND DIRECTING RULE 2004 EXAMINATIONS OF AND
PRODUCTION OF DOCUMENTS BY AFFILIATED ENTITIES**

Empress Casino Joliet Corporation, Des Plaines Development Limited Partnership, d/b/a Harrah's Casino Cruises Joliet, Hollywood Casino-Aurora, Inc., and Elgin Riverboat Resort-Riverboat Casino, d/b/a Grand Victoria Casino (the "Judgment Creditors"), by and through their undersigned counsel, respectfully request the entry of an Order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing Judgment Creditors to issue subpoenas for testimony and documents as set forth herein to Associates Racing Association, Inc., Egyptian Trotting Association, Inc., Racing Association of Illinois, Inc., Coast to Coast Food Service, Ltd., and World Wide Wagering, Inc.  In support of this Motion, the Judgment Creditors state as follows:

**BACKGROUND**

1.  The bankruptcy filings in these cases arise from an $81.8 million judgment entered in favor of the Judgment Creditors against Balmoral Racing Club, Inc. and Maywood Park Trotting Assn. Inc. (the "Debtors") and John Johnston ("Johnston"), an executive and

stakeholder in the Debtors, pursuant to, *inter alia*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964. The judgment was entered December 11, 2014 and followed a six-day jury trial before Judge Matthew F. Kennelly in the United States District Court for the Northern District of Illinois, Case No. 09-cv-03585.

      2.      During the underlying RICO litigation, the Judgment Creditors took representative depositions of various affiliated entities owned or operated by the Debtors or individuals associated with the Debtors. Several of these are corporate shells, with no business operations, and which function as bank accounts in which assets that effectively belong to the Debtors are lodged. In another case, one of the entities shares an address, employees, ownership and management with the Debtors, and is used simply to provide services to the Debtors. These entities are:

    (a)    <u>Racing Associations of Illinois, Inc.</u> ("RA"). RA is a non-profit Illinois corporation with no employees and is managed exclusively by John Johnston. 8/6/12 RA Dep. Tr. (M. Belmonte, witness) at 9, 11, excerpts attached as Exhibit A. RA is funded by the Debtors. *Id.* at 12. RA has no offices separate from the Debtors' offices. *Id.* at 36. RA is used to fund certain expenses (*e.g.*, lobbying expenses and campaign contributions) for the Debtors and "[p]eriodically during the year Balmoral and Maywood fund the account of Racing Association, based on prior history of expenses." *Id.* at 12-13.

    (b)    <u>Egyptian Trotting Association, Inc.</u> ("ETA"). ETA used to be a company that obtained racing dates for horse races from the Illinois Racing Board, but it has not done so or had any other operations since 1999. 8/21/12 ETA Dep. Tr. at 7-8 (P. Svendsen, witness), excerpts of which are attached as Exhibit B. Its official

2

address is the same as Debtor Maywood, but there is no space at that address devoted to ETA. *Id.* at 9. It has no employees, but its management consists of Johnston, his brother William Johnston III and Lester McKeever, a business partner of the Johnstons who is a stakeholder in the Debtors. *Id.* at 10. ETA has a bank account that is funded by the Debtors. *Id.* at 10-11.

(c) <u>Associates Racing Association, Inc.</u> ("ARA"). Like ETA, ARA used to be a company that obtained racing dates for horse races from the Illinois Racing Board, but it has not done so or had any operations since 2007. 8/21/12 ARA Dep. Tr. at 6-7 (P. Svendsen, witness), excerpts of which are attached as Exhibit C. ARA's address is also the same as Debtor Maywood, but it has no office there of its own and has no employees. *Id.* ARA is simply a bank account. *Id.* at 8-9. ARA is owned by Lester McKeever and its General Manager is William Johnston III. *Id.* at 11-12.

(d) <u>Coast to Coast Food Service, Ltd.</u> ("CTC"). CTC provides food and beverage services at the Debtors' race tracks. 8/21/12 CTC Dep. Tr. at 8 (P. Svendsen, witness), excerpts of which are attached as Exhibit D. Again, its address is the same as Debtor Maywood and CTC's representative witness was Maywood's Vice President of Finance. *Id.* at 8 & 5-6. In fact, Maywood's Vice President of Finance oversees the accounting operations of Maywood, CTC, ETA and ARA, though he is employed only by Maywood. *Id.* at 5-6. CTC does have its own employees, but they function for the Debtors and CTC is managed by Johnston and William Johnston III. *Id.* at 8-9. The Johnstons are the authorized signatories

3

      on CTC's accounts and they are CTC's shareholders, with their father William Johnston, Jr. *Id.* at 10-11.

3.     The Debtors are owned by World Wide Wagering, Inc. ("WWW"). (Decl. of Randall Olech In Support Of Chapter 11 Petitions and First-Day Motions (DE #8, "Olech Decl."), at ¶ 31.) Such ownerships are a result of a transfer of interests that occurred during the pendency of the underlying RICO litigation.

4.     On December 24, 2014 (the "Petition Date"), the Debtors filed their voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), thereby commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").

## SCOPE OF EXAMINATION

5.     Under Bankruptcy Rule 2004(a), "[o]n motion of any party in interest, the Court may order the examination of any entity." *Id*. The term "entity" is defined as including "any person." 11 U.S.C. § 101(15). Bankruptcy Rule 2004(b) states that the examination may relate to, among other things, "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the Debtor's estate" as well as "and any other matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(a). Bankruptcy Rule 2004(c) likewise authorizes the production of documents. Fed. R. Bankr. P. 2004(c).

6.     Under Bankruptcy Rule 2004(c), the attendance of an entity or examination and for the production of documents may be compelled pursuant to Bankruptcy Rule 9016, which incorporates Federal Rule of Civil Procedure 45.

7. In order to evaluate the Debtor's financial condition, conduct, property, liabilities, matters affecting the administration of the Debtor's estate, the Judgment Creditors seek to examine corporate representatives of RA, ETA, ARA, and CTC under oath concerning the following matters from December 1, 2010 through the date of the examination:

(a) All transfers of funds, assets or property to or from one or both of the Debtors.

(b) All contracts and/or agreements with one or both of the Debtors.

(c) The nature and source of the examinee's income and revenues.

(d) The nature and source of the examinee's expenses.

(e) All plans, budgets and forecasts concerning future funds received and expenses incurred by the examinee.

(f) All communications between one or both of the Debtors on the one hand, and the examinee on the other hand, related to past and future expenditures by the examinee.

(g) The ownership of the examinee.

(h) All communications with any governmental entity or representative, or any regulatory authority.

(i) Any documents produced by the examinee in response to document requests issued pursuant to this motion.

8. In order to evaluate the Debtor's financial condition, conduct, property, liabilities, matters affecting the administration of the Debtor's estate, the Judgment Creditors seek to examine corporate representative of WWW under oath concerning the following matters from December 1, 2010 through the date of the examination:

(a) All transfers of funds, assets or property between one or both of the Debtors on the one hand, and WWW on the other hand, including by not limited to loans, investments, profit distributions, compensation, dividend payments, and return of capital.

(b) All communications with one or both of the Debtors concerning past or future revenues, expenses, profits, losses, business plans, and/or business strategies.

(c) All financial statements, business plans, and strategies related to one or both of the Debtors.

(d) All contracts and/or agreements related to one or both of the Debtors, including but not limited to shareholder agreements, operating agreements, investment agreements, loan agreements, and promissory notes.

(e) Ownership of each of the Debtors, including but not limited to transfers of any ownership interests.

(f) All Communications concerning an actual, potential or possible sale of one or both of the Debtors or their assets, regardless of whether an offer was actually made or not.

(g) All Communications concerning an actual, potential or possible sale of the examinee or its assets, regardless of whether an offer was actually made or not.

(h) The ownership of the examinee.

(i) Any documents produced by the examinee in response to document requests issued pursuant to this motion.

9. In addition, the Judgment Creditors seek from the production of documents concerning the acts, conduct, property, liabilities and financial condition of the Debtors, and

which may affect the administration of the Debtor's estate. The documents being sought from RA, ETA, ARA, and CTC are set forth in Exhibit E.

10.    The documents being sought from WWW are set forth in Exhibit F.

## NATURE OF EXAMINATION

11.    The examination requested herein cannot proceed under Bankruptcy Rule 7030 because no adversary proceeding has been commenced. The examination cannot proceed under Bankruptcy Rule 9014 because the examination is not being taken as a part of a contested matter. Therefore, the examinations under Bankruptcy Rule 2004 are appropriate and necessary.

## LOCATION OF EXAMINEES

12.    Upon information and belief, RA's principal office is located at 8600 West North Avenue, Melrose Park, Illinois, 60160.

13.    Upon information and belief, ETA's principal office is located at 8600 West North Avenue, Melrose Park, Illinois, 60160.

14.    Upon information and belief, ARA's principal office is located at 8600 West North Avenue, Melrose Park, Illinois, 60160.

15.    Upon information and belief, CTS's principal office is located at 8600 West North Avenue, Melrose Park, Illinois, 60160.

(a)    Upon information and belief, WWW's principal office is located at 8600 West North Avenue, Melrose Park, Illinois, 60160.

**WHEREFORE**, the Judgment Creditors respectfully request that this Court enter an Order substantially in the form attached hereto (a) authorizing Judgment Creditors to issue subpoenas for testimony and documents as set forth herein to Associates Racing Association,

7

Inc., Egyptian Trotting Association, Inc., Racing Association of Illinois, Inc., Coast to Coast Food Service, Ltd., and World Wide Wagering, Inc.; and (b) granting such other relief as the Court deems just and equitable under the circumstances.

                Respectfully submitted,

                Empress Casino Joliet Corporation, Des Plaines Development Limited Partnership, d/b/a Harrah's Casino Cruises Joliet, Hollywood Casino-Aurora, Inc., and Elgin Riverboat Resort-Riverboat Casino, d/b/a Grand Victoria Casino

                By: /s/ Andrew R. Greene

Michael M. Eidelman (#6197788)
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601
(312) 609-7500 telephone
(312) 609-5005 facsimile

Robert M. Andalman (#6209454)
Andrew R. Greene (#6225072)
A&G Law LLC
542 South Dearborn, 10th Floor
Chicago, Illinois 60605
(312) 341-3900 telephone
(312) 341-0700 facsimile

*Counsel for the Judgment Creditors*

8